UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
HAROLD J. LARSON,

                Plaintiff,

-against –

ESSEF DISTRIBUTORS, Inc., ABRAHAM
ELENOWITZ, ROBERT ELENOWITZ, and
ROBYN ELENOWITZ

                Defendants.
----------------------------------------------------X
FEUERSTEIN, J.

OPINION AND ORDER
09 CV 2133 (SJF) (MLO)

On May 19, 2009, plaintiff Harold J. Larson ("plaintiff") commenced this action against defendants Essef Distributors, Inc. ("Essef"), Abraham Elenowitz ("Abraham"), Robert Elenowitz ("Robert"), and Robyn Elenowitz ("Robyn") (collectively, "defendants") alleging, *inter alia*, employment discrimination in violation of the Americans with Disabilities Act, ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the Age Discrimination in Employment Act, ("ADEA"), 29 U.S.C. § 621, *et seq.*, and intentional infliction of emotional distress. Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss: (1) plaintiff's ADA and ADEA claims against Abraham, Robert, and Robyn (collectively, "the individual defendants") in their individual capacity; and (2) plaintiff's claim of intentional infliction of emotional distress against all defendants.

I.       BACKGROUND

1

A. Factual Background[1]

Plaintiff was employed by Essef from 1961[2] until April 28, 2008. (Compl., ¶¶ 21, 23). Abraham was the "owner and a managerial employee" of Essef, (Compl., ¶¶ 5, 8); Robert, Abraham's son, was "a managerial employee and the President of Essef," (Compl.,¶¶ 6, 11); and Robyn, Robert's daughter, was "a managerial employee, secretary and Vice President for two years of Essef," (Compl., ¶¶ 7, 15).

When plaintiff first began working at Essef, his responsibilities included opening the store, "pulling samples", "hot stamping", loading and unloading trucks, arranging inventory and walking company mail to the post office. (Compl., ¶ 9). According to plaintiff, he eventually "became head of shipping, receiving, and sample pulling and took care of the basement inventory, all without a pay raise" and Abraham would often praise him and refer to him as "his right hand man and a very hard worker." (Compl., ¶ 10).

Until 2006, plaintiff was "happy and enjoyed his work." (Compl., ¶¶ 10-11). Plaintiff alleges that thereafter, Robert: "berated" him; "occasionally call[ed] him names" at work; on one occasion, accused him of stealing pens; yelled at him frequently; placed undeserved blame on him; and called him "stupid". (Compl., ¶¶ 11, 13). According to plaintiff, his duties under Robert's supervision included:"cleaning both bathrooms, mopping floors, cleaning the exterior property, pulling weeds, picking up any garbage in the parking lot, and painting over all wall

---

[1] As is required on a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the factual allegations in the complaint, though disputed by defendants, are accepted to be true for the purposes of this motion, and all reasonable inferences are drawn therefrom in favor of plaintiff. They do not constitute findings of fact by this Court.

[2] Paragraph 8 of the complaint states that plaintiff began working for Essef in 1963 while ¶ 23 of the complaint states plaintiff "was in this position for over 45 years and he started in 1961."

2

graffiti...," (Compl., ¶ 12), until 2007, when Robert hired another man to clean the bathrooms. (Compl., ¶ 13). Plaintiff alleges that Robert's conduct caused him to become "upset and more depressed." (Compl., ¶ 13).

Plaintiff alleges that at some point prior to January 2008, he was "no longer the head of shipping and receiving" and was asked to report to a new "boss" named Sally. (Compl., ¶ 14).

Plaintiff alleges that in January 2008, Robyn handed paychecks to other employees, but told plaintiff to pick up his first check of the new year from Robert. (Compl., ¶ 15). According to plaintiff, when he collected his check from Robert he noticed a pay decrease, which he informed Robert was in error. (Compl., ¶ 15). In response, Robert allegedly told plaintiff that Essef "made no money last year and this is what you're getting from now on"; that he could "take it or leave it"; and that he was "being paid too much." (Compl., ¶ 15). Plaintiff alleges that he cried and unsuccessfully sought help from Abraham and to have Robert reinstate his regular rate of pay. (Compl., ¶¶ 15-16). Plaintiff also alleges that he overheard Robert tell Sally, "[w]hen I sell the building, the first thing I'm getting rid of is Harold," and that Abraham told him that Robert was unhappy with his performance and warned him not to "make [Robert] mad or [Robert] will fire you." (Compl., ¶ 16).

Plaintiff alleges that thereafter he suffered from worsening seizures, which at times caused him to collapse "in the middle of just walking." (Compl., ¶ 17). According to plaintiff, when he asked his co-workers to help lift boxes one day, everyone refused except one individual. (Compl.¶ 17). This incident, coupled with the alleged insults from Robert, caused plaintiff to cry. (Compl., ¶ 17). Plaintiff alleges that he became suicidal and overdosed on his seizure medication because Robert allegedly "made [him] feel so bad that he wanted to die." (Compl., ¶

3

17). On March 17, 2008, plaintiff was admitted to the psychiatric unit at Nassau County Medical Center, where he collapsed. He was transferred to another unit, placed on a heart monitor and eventually discharged on March 25, 2008. (Compl., ¶ 18). According to plaintiff, on March 28, 2008, when he returned to work, "everyone welcomed him back" and "it was the first good day in months." (Compl., ¶ 19).

In early April 2008, plaintiff suffered from seizures on two (2) separate occasions, while not at work, for which he was hospitalized. (Compl., ¶ 20). After his release from the hospital, plaintiff returned to work. On April 28, 2008, Robyn asked plaintiff's wife to pick him up from work because he was "red in the face." (Compl., ¶ 21). Plaintiff returned to work the next day. On April 30, 2008, plaintiff unloaded a cargo box "delivered with 300 pieces weighing about 20-80 pounds each" and placed each piece on the sidewalk. (Compl., ¶ 21). Later that day, plaintiff fell while carrying a forty (40) pound box down the stairs, at which point Robert allegedly told plaintiff, "[g]o home, you're fired and if you come back tomorrow your [sic] fired again." (Compl., ¶ 21). Plaintiff alleges that he then cried and "could not believe, after 45 years," that he was not offered severance pay. (Compl., ¶ 22).

Plaintiff alleges that his employment was terminated because of his age (67) and disability.[3] Plaintiff further alleges: (1) that he "was never given any OSHA safety equipment to do his job"; (2) that "Robert illegally took away his pay;" (3) that he was the oldest and most senior person in the company when he was fired; and (4) that he was the "only person afflected

---

[3] From the face of the complaint it appears that plaintiff's disability is that he suffers from epileptic seizures.

4

[sic] by Epilepsy and drive [sic] to suicide by the discriminatory harassment directed against him" by the individual defendants. (Compl., ¶ 23).

B. Procedural Background

On May 19, 2009, plaintiff commenced this action against Essef and the individual defendants alleging, *inter alia*, employment discrimination in violation of the ADA and ADEA and intentional infliction of emotional distress. Defendants now move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss: (1) plaintiff's ADA and ADEA claims against the individual defendants in their individual capacity; and (2) plaintiff's claim of intentional infliction of emotional distress against all defendants.

II. DISCUSSION

A. Rule 12(b)(6) Standard of Review

The standard of review on a motion made pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is that a plaintiff plead sufficient facts "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). The pleading of specific facts is not required; rather a complaint need only give the defendant "fair notice of what the * * * claim is and the grounds upon which it rests." Erickson v. Pardus, 551 U.S. 89, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); see also Boykin v. KeyCorp, 521 F.3d 202, 214 (2d Cir. 2008). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, __ U.S. __, 129 S.Ct. 1937, 1949, 173

L.Ed.2d 868 (2009) (quoting Twombly, 550 U.S. at 555, 127 S.Ct. 1955). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Twombly, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. 544, 127 S.Ct. at 1959. The plausibility standard requires "more than a sheer possibility that defendant has acted unlawfully." Iqbal, __ U.S. __, 129 S.Ct. at 1949.

In deciding a motion pursuant to Rule 12(b)(6), the Court must liberally construe the claims, accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Goldstein v. Pataki, 516 F.3d 50, 56 (2d Cir. 2008), cert. denied. 128 S.Ct. 2964, 171 L.Ed.2d 906 (2008) (quoting Chambers v. Time Warner. Inc., 282 F.3d 147, 152 (2d Cir. 2002)). However, this tenet "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, __ U.S. __, 129 S.Ct. at 1949. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 1950.

In determining a motion to dismiss, the Court must limit itself to the facts alleged in the complaint, which are accepted as true; to any documents attached to the complaint as exhibits or incorporated by reference therein; to matters of which judicial notice may be taken; or to documents upon the terms and effect of which the complaint "relies heavily" and which are, thus, rendered "integral" to the complaint. Chambers, 282 F.3d at 152-153.

B. Individual Liability under the ADA and ADEA

Defendants correctly contend, and plaintiff concedes, that individuals may not be sued in their individual or personal capacity under the ADA and ADEA. See Henrietta D. v. Bloomberg, 331 F.3d 261, 288 (2d Cir. 2003); Cherry v. Toussaint, No. 02-7322, 50 Fed. Appx. 476, 81, 2002 WL 31479004 (2d Cir. Nov. 1, 2002) (holding that the ADEA precludes individual liability); Martin v. Chemical Bank, Nos. 95-9015, 96-9365, 129 F.3d 114, 1997 WL 701359, at * 3 (2d Cir. Nov. 10, 1997) (holding that individuals may not be held personally liable under the ADEA). Accordingly, to the extent that plaintiff's complaint can be read to assert claims under the ADA and ADEA against the individual defendants in their individual capacity, those claims are dismissed with prejudice.

Moreover, there is no cause of action seeking monetary damages for employment discrimination under the ADA or ADEA against a supervisor in his or her "official" or "representative" capacity. See, e.g. Fox v. State University of New York, 497 F.Supp.2d 446, 451 (E.D.N.Y. 2007) (citing cases dismissing official capacity claims under the ADA and ADEA as redundant to claims against the employer since the plaintiff already had a cause of action against the employer); Lane v. Maryhaven Center of Hope, 944 F.Supp 158, 163 (E.D.N.Y, 1996) (holding that there is no cause of action for employment discrimination under the ADA against a supervisor in his "official" or representative capacity.) Accordingly, to the extent that plaintiff asserts claims against the individual defendants in their supervisory or representative capacity, those claims are *sua sponte* dismissed with prejudice.

C. Intentional Infliction of Emotional Distress

To establish a claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate: "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." Conboy v. AT & T Corp., 241 F.3d 242, 258 (2d Cir. 2001); see also Bender v. City of New York, 78 F.3d 787, 790 (2d Cir. 1996). "[T]he standard for stating a valid claim of intentional infliction of emotional distress is 'rigorous, and difficult to satisfy.'" Conboy, 241 F.3d at 258 (quoting Howell v. New York Post Co., 81 N.Y.2d 115, 122, 596 N.Y.S.2d 350, 353, 612 N.E.2d 699 (1993)). Liability may not be imposed unless "the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999) (quoting Howell, 81 N.Y.2d at 122, 596 N.Y.S.2d 350). "Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." Id.

As a matter of law, the allegations in plaintiff's complaint cannot reasonably be regarded as so extreme and outrageous in nature as to permit recovery for intentional infliction of emotional distress. Accordingly, plaintiff's intentional infliction of emotional distress claim is dismissed in its entirety.

1. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure states that "[t]he court should freely give leave [to replead] when justice so requires." A district court "should not dismiss [a complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Branum v. Clark, 927 F.2d 698, 705 (2d Cir.

8

1991); see also Van Buskirk v. The New York Times Co., 325 F.3d 87, 91 (2d Cir. 2003) (accord). In the instant case, since even a liberal reading of the complaint gives no indication that plaintiff can state a valid claim for intentional infliction of emotional distress, see, e.g. Walzer v. UAL Corp., No. 08-0622-cv, 2009 WL 3617808, at * 1 (2d Cir. Nov. 4, 2009), any amendment to the complaint to replead this claim would be futile. Accordingly, plaintiff's intentional infliction of emotional distress claim is dismissed with prejudice.

III. CONCLUSION

For the foregoing reasons, defendants' motion pursuant to Rule 12(b)(6) is granted in its entirety and plaintiff's ADA and ADEA claims against the individual defendants and intentional infliction of emotional distress claim are dismissed with prejudice.

SO ORDERED.

_____
SANDRA J. FEUERSTEIN
United Stated District Judge

Dated: November 19, 2009
Central Islip, New York